The next case is in the interest of S. L. Minor whenever you're ready. My name is Bill Miller. I'm court-appointed to appear and present this appeal on behalf of Julia Finley out of Marion County. This case was a termination of parental rights. It was handled by the public defender there, so I did not try the case. However, we've, of course, reviewed the transcript and we have prepared briefs and have presented those to the court for a brief and a reply brief thereafter. The child in this case, S. L., was taken into care of DCFS. It was in September, September 11th of 2007. There was concern over some bites, insect bites, perhaps animal bites, that type of thing. So the child was taken into emergency care. Petitions, of course, were filed as required. The allegations, basically, were that she couldn't take care of the child. So took the child, got the child to safety. Then, as we proceeded on through the process, the overall goal, of course, as the court's aware, is to reunify the family after changes have been made to correct the problems which resulted in the child being removed in the first place. On this particular case, the state felt as though she was not making the reasonable progress that was necessary, and they eventually filed a petition to terminate parental rights. And I think it's important to let the court know exactly what they were alleging whenever they filed that petition. The first allegation was that she failed to make reasonable efforts to correct the conditions which were the cause of the removal. That was paragraph A. Then in paragraph B, they basically said that she failed to make reasonable progress toward returning the child to her within nine months after the adjudication. So that would have been the original first nine months. Then they had in section C that she had failed to make reasonable progress toward the return of the minor to mother during any nine-month period after the end of the initial nine-month period. And I think that's an important piece of language there. Then in D, they were saying basically that she was unable to discharge parental responsibilities as supported by competent evidence from a licensed clinical psychologist of mental impairment and sufficient justification to believe that the inability to discharge those responsibilities would extend beyond a reasonable time, which is what the statute sets forth. Now, all of these are allowed open in the statute, and the court heard the evidence. And after hearing the evidence, counsel that tried this case before Judge McHaney basically made a ruling or made a motion for a directed verdict with regard to paragraphs A, B, and D. And the judge at that point in time took those under advisement. In his order, however, he did go ahead then and grant the motion to dismiss with regard to paragraph A and paragraph B, or for directed verdict, I'm sorry. So what proceeded then for the court, he looked at this failed to make reasonable progress during any nine-month period after adjudication. And secondly, that she was unable to discharge parental responsibilities due to the psychologist's belief that she could not, that she had mental impairment to the extent that it would go beyond a reasonable amount of time. So those were the reasons set forth in the order. Now, with regard to our position here is this, two things. Well, there are actually three issues which we wanted to bring to the court's attention. And first off, whether unfitness under paragraph C, which is the third reason that I put forward, is contrary to the manifest way to the evidence. I mean, this has, it's a clear and convincing standard. It's one of the highest, I guess, rights. The courts have always fearlessly protected termination of parental rights, but we understand there are times when that can occur. But we believe the circuit court's finding under paragraph 9C of their complaint, again, which is that failure to make reasonable progress under any nine-month period following the first nine-month period certainly cannot be upheld as clear and convincing. Reasons for that are numerous and set forth in our brief. But I think it's very important to note that she had complied throughout this period of time with the service plans that were provided to her by DCFS. Now, service plans in and of themselves, as courts have ruled, the appellate court has ruled, are not the be-all and end-all as to whether or not to do or don't get your child back. But it's certainly evidence of reasonable progress in an attempt to make a change or a correction of the conditions which caused the child to be removed in the first place. I know there's evidence where DCFS tries to basically say, well, yeah, she got a certificate, she completed PAVE, but she certainly didn't understand it. Well, they sent her to PAVE. They must have feelings that PAVE knows what they're doing. And when they give a certificate to somebody that says, hey, she passed, she did well, here's her certificate, we say she's done. Then she completed that portion. We also think that if you look basically at her life and how it had progressed, that she had made progress and had even learned from the services she had received. Your Honor, she had made progress throughout, and I think it's obvious, simply by keeping her visits, seeing her daughter. She had made changes in her life. In fact, when this first day of this hearing was held, she had been with a gentleman for, I guess, about five months, maybe a little longer. And he had two teenage daughters, 12, 13 years old. She also had her older son, Michael, who is, during this period of time when the daughter was taken, Michael was about the same age the daughter would have been at the time parental rights were terminated. The daughters, this gentleman who was residing with her, would leave his daughters there with her, unattended, had no concerns. Friends of Michael's who would come over and visit in the home testified as well, said basically, hey, it's a normal home. Michael, and this is all in the evidence, so I'm not just spouting it, Michael is in high school. He's always lived in the Centralia area, other than for one brief period of time when I think she moved over to the Metro East area. But she's generally always been in the Centralia area, maybe in a different home. And by that I mean may find another place to live. Obviously she had a rough life before, and we don't dispute that. But during this period of time when the child was taken, up to the date she was terminated, she had her son Michael at all those times, and he's set to graduate high school. The gentleman that was involved in her life is very important, I think, because if you read the judge's order in this case, he even says in his order when he terminates rights that he had noted in his notes while he was hearing the case that, man, this case gets harder. Because he said this guy was an awesome individual. You know, he had these daughters, he was a positive influence on Michael and all these various things. And it was obvious that this is a different kind of person that she was with before the records full of these guys that would hit her, abuse her, didn't treat her right. She had taken these skills that she had been learning over this four-year period and actually picked some guy that Jeff thought was stupendous, wonderful. And it almost sounds like if they hadn't broke up, she would have gotten her kid back. Now, I'm not saying that's what would or wouldn't have happened, we don't know, but if you read that order, it's kind of what it looks like. Now, I suggest to this court that just because a relationship breaks up doesn't mean that you're not stable, that you're not able to be a parent. We all know relationships come and go, and I think the key in this case is that this was not the kind of a breakup that this woman would have had five years before. It would have been from some guy knocking her teeth in, and that's pretty much clear from the record. The key issue in this case was, was she making reasonable progress? And I guess to put it the other way, was the judge correct when he said, by clear and convincing evidence, she's not? There is so much in this record that shows she had advanced, that she was making progress, that we believe that his finding was against the manifest way to the evidence with regard to that first paragraph. Now, before I go into the mental impairment, unless your honors want me to move to there, I think it's important to note that this one particular issue, the paragraph which said any nine-month period, is not appropriate under the law. You have a pleading issue in this case that we've raised with the court, and that concerns the fact that they did not set out individually the nine-month periods that they were going to be presenting evidence on. Now, this is pretty clear in the statute, they have to do that. The statute was specifically modified, I believe it was in 2000, we set it all forth in there, but it was modified in 2006, specifically to change it, and we put the legislative history and everything in there concerning this particular statute. And what they were attempting to do was to keep prosecutors from saying, well, look, we didn't get you on the first nine months, but if judges look at everything since then, here's what we've presented, everything since then, might be five additional nine-month periods, look at all that, and then just say, yeah, in some nine-month period, she didn't make reasonable progress. The judge never in this case pinpoints what nine-month period he's looking at, nor does he say she didn't do any good in every nine-month period after the first. And the state's evidence went in shotgun. Just shotgun. You know, I mean, there wasn't questioning specific to a nine-month period or second nine-month period, third. No, and I think the argument the state is trying to make at this point in time, well, look at the service plans. You know, they were talking about service plans at different periods of time, but that's not the same thing. If you take it back now, analyze it, scrutinize the record, you know, set out dates, you might be able to come up with things, but the evidence didn't come in that way. No, and that's not the manner in which it's specifically why this statute was changed, because this type of thing was happening. And when something is at stake, like terminating someone's parental rights, it's important that defense counsel know what you're faced with, and that's exactly why. And if you look at the statute and legislative history on that, it's pretty clear. And the case that's cited by the state in their reply brief, and I'm not submerging anybody or anything, but it was decided under the old statute. It might have even been because of a case like that that the legislature decided to amend it. But there is nothing in there that says counsel or trial court level waived this argument or did anything inappropriate by not saying, hey, you guys need to spell this out. I mean, it simply says there it's the prosecution's burden to set forth what nine-month periods you're going after specifically, not just say, hey, any time from that first nine months to ten years later, we can say you didn't make reasonable progress. So we think it should be overturned. And the statute pretty much says respondents are not required to even file an answer to that plea. That's what it says. We don't have to do anything. It's up to the state to dot all their I's, cross all their T's on that. I don't find any case out there, really, that has decided this specific issue based on this statute yet. But we felt like it was important enough we needed to raise that, because that is one of the reasons the judge ruled. And we can't tell from his order which, what nine-month period is he talking about, each nine-month period? So it's even hard on appeal to attack, you know, we're coming at you with a shotgun as well here and saying, look, here's what all she did. We think she did make reasonable progress, but we're getting hit with a shotgun, too, so we blow back with our shotgun, but I really don't know which nine-month period the judge ruled on. On this impairment issue, and I think what's important to note here, the first doctor, Dr. Kluge, had evaluated her some maybe three years before, two years before. Then the second doctor evaluated her, but it was approximately a year before we even had this hearing. And what I would like, you know, what I would tell the court is this, that's partly why it's important to know at what time frame this judge was evaluating. The doctor even testified at hearing that six months to a year stability, he would think if she had therapy, she could realistically have an opportunity to get these kids back. Six months to a year is not an unreasonable period of time. In addition, she had done what they told her to do with regard to counseling. They make some mention that she wasn't taking medication, excuse me, in the trial court. They've made mention of that, but if you actually examine the record, she had taken it, she had an allergic reaction. She had just been evaluated again shortly before and the doctor didn't prescribe her any medication. So as far as counseling and that type of thing, she had been doing it. She had been stable, as we said, for quite a period of time since the doctor even evaluated her before he testified, which would have been about a year. So I don't think that the state met their burden of proof either with regard to whether or not it was something that would unreasonably prevent her from performing her parental duties. She had been performing them with regard to her son Michael. Now I know that courts have ruled that simply looking at another child, the fact that you were able to take care of that child doesn't necessarily mean you take care of another child. But I think in this case, if you look at what she had done, it's not a case where she said I'm not cooperating with you DCFS, I'm not going to go to PAVE, I'm not going to do this, I'm not going to do that. She did it all and even asked for additional counseling because she wanted to get her child back. And she was taking care of Michael, he's progressing along. I don't see how any court could rule by clear and convincing evidence that she was unable by mental impairment to take care of a child. She was. Unless your honors have any questions regarding the issue, I don't believe I'll satisfy your position. Thank you. Your honors, counsel. I will begin with the third argument and go backwards because I think that's where first concerns should be addressed. Proceedings below in a juvenile case are governed by civil procedural rules. The mother below made no objection to the pleading at all. And the rule provides that all defects in pleadings either in form or substance not objected to in the trial court are waived. They are, her objection about not specifying the nine month period is waived. Why shouldn't we hold as it looks pretty clearly the legislature intended that that's a mandatory duty of the state, can't be waived. I mean the statute set out any nine month period, it already said that. The legislature then amended it and said the state, I can tell you exactly what it said. The petitioner shall file with the court and serve on the parties a pleading that specifies the nine month period or periods relied on. The pleading shall be filed and served on the parties no later than three weeks before the date set by the court for closure of discovery. And the allegations in the pleading shall be treated as incorporated in the petition into the petition or motion. Failure of a respondent to file a written denial of the allegations in the pleading shall not be treated as an admission that the allegations are true. So I mean the respondent doesn't even have to file an answer, it can't be deemed admitted as the civil procedural rules. So why wouldn't we interpret that, that the legislature, the intent of the legislature was to make this a mandatory duty on the part of the state, period? It should have been done. I'm not arguing that it shouldn't have been done. I'm saying at this point when it could have been easily corrected below and was not brought to the, there was no complaint made about it below and it could have been easily corrected below. At this point in time, it is waived. And why is waived? We can correct it now. We can correct it now that the state didn't do what the state mandatorily required to do. No. At this point in time, according to the rules of civil procedure, it is waived. Any defect to the pleading is waived by statute. And that is the controlling statute. And the reason why it's appropriate to find it waived is because one, in their brief, they make no complaint about prejudice or surprise. They don't make any argument that it was any kind of plain error. They don't make any argument that it was, that the evidence was closely balanced or, and, but it is, it does affect the substantial right. I will say that. But the reason why it's appropriate to apply waiver in this case is because there were five rounds pled in a sense. Each nine-month period subsequent to the initial nine-month period is a separate ground. There were four nine-month periods after the initial nine-month period expired, and then there were six months approximately after that. So there are not five full nine-month periods after the initial one expired. There are four. Then there is another ground, which was the mother's inability to discharge her parental right, her parental duties and responsibilities. Let's stick with the statute here, okay? Because, I mean, we ended up in this case with the exact same situation. The legislature amended the statute to prevent. The state never talked about any particular nine-month period. It was all, the evidence was all shotgunned in. And the court never specified what nine-month period his ruling was based on. That's correct. And you could, you could interpret any as all, as it was before. Well, he didn't say at no time after nine months after the adjudication of neglect did she have reasonable progress. He said, you know, the third allegation is proved, which all it said was any nine-month period. And you could construe that as all. And I will argue that it is all. But the reason why it's appropriate to find waiver in this case is because there is another ground that has nothing to do with this defect in the pleading that is sufficient to find the mother unfit. Any one ground is sufficient. And for those reasons. I'm going to have some questions about that one too, but go ahead. But for those reasons, it's appropriate to find a waiver in this case because it's waived by statute. It could have been easily remedied below. There was no complaint. And she shouldn't be able to complain now for the first time on appeal because this child was adjudicated neglected on November 29, 2007. That's nearly five years ago. We're talking about a child who has had five years now of no stability and no idea of where home is and what her future is going to be. And those are reasons. Of course, the issues in this case before the court are was she determined to be appropriately to be unfit. Correct. But I'm pointing out that it's been five years. And if you want to. That's another reason to find this way. The mother could have should have said something. But if you reverse this and do not find the other ground and remand this. Well, the issue, the issue, the issue in this case is whether or not she was proved to be unfit. That had nothing to do with how long the case has been pending or anything like that. I mean, and the case isn't over if they failed to prove it. The case just goes back and there's still a pending juvenile proceeding. If you're talking over me, I can't hear what you're saying and you can't hear what I'm saying. Now, go ahead. My point is that the reason it's appropriate to find waiver in this case is that it could have been corrected. It's been a very long time for this child who's been adjudicated since November 29th, 2007. And if the other reason is because it there is an independent ground that is separate from any defect in this pleading. On which this court can affirm the court below in its finding of unfitness. So let's move to that ground of unfitness unless you have further questions. I do apologize for talking over you. I'm just a little passionate about this case. If you look at the mental impairment ground, you'll find that Dr. Kosmicki made a very thorough examination of the mother. He examined all of the prior examination by Dr. Klug. He did a thorough examination and interview of the mother herself and thorough testing. And he found that the mother had post-traumatic stress syndrome, a personality disorder not otherwise specified. And that she had an IQ of 74, which is a borderline mental impairment. He did not find that her IQ was the impediment to parenting, but he did find the post-traumatic stress syndrome and the personality disorder did. She had an abysmal and abusive upbringing. Things that happened to her were abominable. She had several psychiatric hospitalizations between the ages of 10 and 14. She'd been married to three men and had a paramour. All of them had been abusive and one had been physically abusive and one of them had also been sexually abusive. She was totally unsettled in all of her relationships with men. She moved constantly. She had at one point moved in with a man who was a known sexual offender and at that point she had her 12-year-old son with her. And when the man expressed some desire to perpetrate a crime upon her 12-year-old son, she sent the son away, but she continued to live with the sex offender. She just simply... Those are pretty much all things that preceded the beginning of this juvenile case, most of what you've just recited. No. I mean the previous marriages and abusive... Well, one of the marriages, but that has to do with him being thorough in examining her background. And he also asked her to relate what she knew about her background and he compared the two and he as well tested her. The court found Dr. Kosmicki to be credible and the defendant doesn't... I mean the mother petitioner... I mean the mother does not say that he was not credible and this court should give deference to the court's finding below. Dr. Kosmicki found that it was the post-traumatic stress syndrome that had chronic features. In other words, not acute features, it was chronic because the abuse that had caused this syndrome had occurred to her when she was so young. And that these things are chronic and the personality disorder also had to do with her associating with very dangerous men, dangerous not only to her, but to her children. And her lack of having any kind of discretion about this, about understanding her problem. Did Dr. Kosmicki express any opinion about her ability to discharge her parental responsibilities as to her 15-year-old son? He said at that point a son is a lot different than a small daughter and that perhaps she might be able to parent that child, but he said not the little girl. So he said she was mentally impaired to the extent of being unable to discharge her parental responsibilities as to her daughter, but not as to her son. Well, her son had been... she voluntarily relinquished her son when he was small. I'm just asking about what Kosmicki said though. He talked about that a 15-year-old boy is a lot more able to fend for himself than a young female child. Particularly since she has the proclivity to associate with men that are physically abusive or sexually abusive. For instance, the one man she accused of attempt rape, she continued to associate with him. She made comments that if her daughter had been with her, he wouldn't have attempted to rape her. Her personality disorder causes her to put her children into... would cause her to put Sierra, because Michael's not at issue here, would cause her to put Sierra into circumstances that are very risky for her. He said that her condition is chronic. He recommended long-term psychiatric care and possibly appropriate psychiatric medication. He opined that her prognosis was poor, guarded. He did not see that she would become fit to parent within a reasonable time. He said even after years of psychiatric care, he would not trust Sierra back in her care until she had demonstrated stability for six months to a year. Here's a quote from what he said. He was asked, well, how long do you think she'll be unable to parent? He said he would like to see, quote, six months to a year of logistical stability, being in one place, utilities, having a home, having no arrests, having no instances of domestic violence and no substance abuse. And that opinion was rendered ten months before the case actually went to trial. His report, he wrote a report, and it was ten months before. Is that correct? Now, then the evidence at trial, didn't the evidence show that at the time of the hearing she had lived in the same residence, which DCFS deemed appropriate for at least seven months? During that time period she had utilities, no arrests, no instances of domestic violence and no substance abuse. I mean, so wasn't there some reason, wasn't there pretty much a showing that she'd met the terms of the doctor's criteria for a reasonable period of time by the time of the hearing? She had not had long-term psychiatric care at that point in time. Did he define what long-term was? Did he say any, I mean, when he was asked how long would this go on, he said he would have to see six months to a year of logistical stability defined as I just stated. And she did not show that. She showed a temporary time of about six months or less in which she could attach herself to a man who was stable, but she dumped him. And her own actions continued to persuade the court that Kosmicki's diagnosis and prognosis was correct because she didn't remain with him. And she, you know, she did not demonstrate stability at all. And so for that reason, you know. I mean, there are two components to that statute, right? I mean, you have to show that she has a mental impairment. Yes. And that there's sufficient justification to believe that the inability to discharge parental responsibilities shall extend beyond a reasonable period of time. Both of those have to be shown by clear and convincing evidence. Correct. Yes. And it was shown. And it was shown. I think the judge was troubled below because he was looking at, you know, well, maybe. Because he had hopes that she was becoming stable. But her action showed that Kosmicki's prognosis and diagnosis was correct, that she was not stable. She had a personality disorder and she had the post-traumatic stress syndrome and she was not making progress after all. And she had not had long-term. I know long-term was not described. But she didn't just demonstrate six months to a year stability. She hadn't gotten to that point yet. Kosmicki did not, he did not think at the time that he testified that she could discharge her parental responsibilities towards Sierra. And nothing in the six months or the few months that she lived with, I've forgotten his name, the one man that was stable, the only man that she's lived with that didn't have a criminal history or was not physically abusive. That wasn't enough, according to Kosmicki, to demonstrate stability. The stability was that she was living. Kosmicki didn't know anything about Mr. Schroeder. I know, but I'm applying his rationale to this circumstance, which the court did too. The court found it dismaying that in the end she fulfilled exactly what Kosmicki said about her, that she was unstable and not fit to discharge her parental responsibilities. So this court should affirm the court's finding of unfitness on this ground. And if this court does, then any defect in the pleading is totally harmless because that defect doesn't even have to be considered. There's only one ground, you only have to affirm on one ground, not multiple grounds, not all the grounds, this isn't a criminal trial, this is one ground of unfitness. And that's another reason this court should find it waived. I'm not saying that it was not a defect in the pleading, the legislature is correct to require that the nine months' periods be specified. It would certainly clear matters up. But a petitioner doesn't get that unless they raise it. They should have raised below the defect. I'm not saying that in any case, in every case, it would be harmless error. I'm saying in this case it's waived and it's definitely harmless error because there is an independent ground that is distinct from any defect in the pleading. And that's the mental health ground of unfitness. But as far as the nine month periods, it wasn't exactly shotgun because the testimony below proceeded chronologically, and chronologically the court below could have found all of the four month periods that existed after the initial one. And so that's the support to the front of the court. Thank you counsel. Counsel? But I wanted to make a couple of quick points that I think perhaps I didn't make clear enough earlier. Number one, the rules of civil procedure may apply. These are quasi-criminal civil type proceedings anyway that are normally held under the juvenile code. This specific statute doesn't put any burden on the parent to respond at all. It is a clear direction by the legislature, and if you look at the legislative history and everything, this is exactly what they were trying to avoid. Trying to avoid exactly what happened here, and that is the state not giving the particulars as to what they were going to prove in these next five, nine month periods. These cases go on a long time. I mean the overall goal is to reunite. That's why, you know, it doesn't matter if it took five years. This girl still knows who her mother is. She's ten years old. She sees her mother. They're having visits. It's okay. That's what we've set up under the statute. You see if these people continue to make reasonable progress, and if they are, you don't terminate. And apparently, I mean, I think you can look at this record and say, look, they didn't even try to terminate her until a certain date. So was she making reasonable progress, and finally she quit, so they didn't. We don't know. I don't know. And I think that's why the legislature said you have to tell them what nine month period you're doing it and set forth a little bit of facts so you can prepare. It didn't say in there we had to ask for it. It didn't say in there we have to object. It simply says to the state, if you're going to do this, this is what you shall do. They didn't do it. So that ground is out is what I think that that statute. And I haven't, there's no cases out there where this has been decided before. So I think it's something that needs to at some point in time be addressed. But the other thing I want to point out is this doctor that they're laying all this, basically the fact that she had a mental impairment on, hadn't seen her for a year prior to his testimony. And he says himself that six months to a year of stability, you know, no problems, would show him maybe, yeah, she can undergo therapy. And he doesn't say it has to be inpatient therapy. If you look at the record, what he recommended was that she get long-term therapy and that if she could, intensive therapy. But that could go on even after she is reunified. In other words, he was saying, what is long-term therapy? Long-term therapy is going to counseling, doing things. It doesn't mean you're going inpatient. It doesn't mean you're going to be institutionalized. Nobody said she needed to be. But the simple fact here is that a year before, he saw this lady. And since that time, she continued to do everything she was supposed to do, whatever DCFS told her to do. She was parenting her son, Michael, who at the time, the other daughter was taken, was like 10, 11 years old, not 15. So she was able, and I don't get this old distinction between a 10-year-old boy and a 10-year-old girl. I mean, I like to parent one, not the other. And also, she had had no arrests, clean house, acting responsibly towards other children who came into her home in this other relationship. She had kept up her utilities, no arrests, no domestic violence. She was no longer unable to show, or unable to sustain a lifestyle where you could bring a child in. And that happened for almost a year. The bottom line is, I think the court, if you look at his order, what he says basically, well, this, the fact that she broke up with this guy, that just shows what Kosmicki was saying is true. I don't think that just because she broke up with somebody, that that flips everything by clear and convincing evidence. It could also be, if you're going to look at it that way, hey, she figured out that this wasn't going to work out. They broke up. Well, in fact, the only evidence in the record, isn't it, that they were still friends? Yeah, they were. You know, they just weren't going to continue their relationship. To me, that shows a development as opposed to the way she used to be, hanging out with these guys who would beat the snot out of her, and then she just stuck around. This shows, it wasn't physical, it wasn't anything like that, but guess what? Happens in relationships sometimes. You get together, it's not going to work, split up. No need to make it nasty, no need to make it dirty. They were still friends. I think that's key, and your honors, we believe the circuit court should be reversed, and that her parental rights should be reinstated. Appreciate your time. Thank you, counsel. We appreciate the briefs and arguments of both counsels.